**Harlan D. WHITE, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–94–159 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted May 30, 1995.

Decided Nov. 22, 1995.

John D. Reeves, Lufkin, for appellant.

John S. Holleman, District Attorney, Livingston, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

**OPINION**

STOVER, Justice.

Appellant was indicted by the Grand Jury of Polk County for the offense of Capital Murder. The indictment charged that appellant, Harlan D. White, Jr., "did then and there unlawfully, intentionally and knowingly cause the death of an individual, namely JACK ALEXANDER, by shooting him in the head with a firearm" on or about May 31, 1992. The State waived the death penalty. Trial was to a jury and the jury found the

appellant guilty of the offense of Capital Murder, as charged in the indictment. The trial court assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. From this conviction, the appellant has perfected his appeal.

## BACKGROUND FACTS

The victim, Jack Alexander, encountered the appellant at a truck stop on Highway 59, known as the Seven Oaks store. The appellant and a juvenile, Michael White, hitched a ride from the truck stop with the victim to a town known as Leggett, approximately three miles away. The victim transported appellant and the juvenile to the Leggett School. After the juvenile got out of the car, a shot was fired and both appellant and the juvenile ran from the scene. They walked back to Seven Oaks and went to the house of a friend.

A neighbor heard a gunshot and a car accelerate. She went outside and recognized the vehicle. Upon approaching the vehicle the witness saw the victim in the driver's seat with his head against the back of the seat with blood on the side of his face and clothing. The witness ran back home and called 911.

Officer Nettles of the Polk County Sheriff's Department was dispatched to Leggett School and arrived around 11:15 p.m. He observed the victim with a gun shot wound to the right side of his head in the temple area. The officer was not able to communicate with the victim and stayed there until the ambulance and other law enforcement officers arrived.

Officer Nettles then proceeded to the Seven Oaks store to investigate as it was the only place in the area open. Upon receiving information concerning a small car with four black males, and that one of them possibly had a gun, the officer proceeded to search for the vehicle described by the clerk. Subsequently, the officer picked up an individual identified as E.J., a juvenile who appeared to be intoxicated, and the officer took him to E.J.'s grandmother's house. Upon dropping off E.J. at his grandmother's house, Officer Nettles noticed two other black males and asked the juvenile, Michael White, if he knew anything about the shooting over at Leggett School. Michael White replied that he did not.

Sheriff Darrell Longino of the Polk County Sheriff's Department testified that upon his arrival at the scene of the shooting he discovered footprints in the area outside the passenger door of the victim's vehicle. The sheriff directed that the footprints be photographed and a plaster cast mold of the impressions be taken. At that time, the sheriff placed Detective Joe Rhodes of his department in charge of the crime scene investigation. Sheriff Longino received some information that E.J. had been in the vicinity of the Seven Oaks store and proceeded with Detective Rhodes to E.J.'s grandmother's house. Upon arrival, they learned from the grandmother that E.J., appellant Harlan White, Jr. and the juvenile Michael White were present. The officers then requested permission from the grandmother to talk to E.J. and the others, which she gave. The three individuals came outside and talked with the officers. Several other law enforcement officers had arrived at the grandmother's house by this time.

Appellant Harlan White, Jr., and the juvenile Michael White were separated and questioned by different officers. Upon questioning appellant, he admitted to shooting the victim. The grandmother of E.J. gave the officers her consent, as owner, to search the house. Appellant directed the sheriff to a .22 caliber revolver, which was underneath the mattress of the bed. Detective Rhodes gathered five bullets along with the revolver. At this point, appellant and the juvenile were placed under arrest and incarcerated. After arriving at the jail, the appellant made a statement as to his involvement in the shooting. The statement related that the appellant and his cousin, Michael White, caught a ride with the victim and as appellant was getting out of the car his gun fell out of his coat pocket, appellant fell inside the car, and the gun was still cocked. He tried to pick up the gun, he attempted to "uncock" it when his finger slipped off the hammer causing it to go off, and the victim was shot in the head on the right side by the temple.

The victim was transported by ambulance to the University of Texas Medical Branch at Galveston, and Dr. William Korndaufer, MSP, Chief Medical Examiner for Galveston County, testified that the victim died at approximately 4:15 a.m. on June 1, 1992.

## POINTS OF ERROR

The appellant brings forth two points of error, the first point being that "[t]he trial court erred in denying appellant's motion for mistrial where the prosecutor informed the jury panel of a juvenile accomplices [sic] prior plea."

During voir dire, the prosecutor explained the nature of what had transpired concerning the appellant's juvenile accomplice. Appellant objected and requested an instruction from the trial court and also at that time requested a mistrial, believing that appellant had been prejudiced and thus would be denied a fair and impartial trial. The portion of the State's voir dire to which appellant objects is set out as follows:

[BY THE PROSECUTOR]:

I believe you will see from the evidence in this case that there will be what we call a codefendant, that on the day in question, that we allege, I think we will prove, that he was working in cooperation with his cousin. His name is Michael Donnell White. Mr. White was sixteen at the time, and almost seventeen, that is, Michael Donnell White, the Defendant's cousin. He is now seventeen years and eleven months, fixing to be eighteen. Any of y'all know Michael Donnell White? Okay.

Now, Mr. White has already pled guilty and has already been sentenced in this case. What he was sentenced to was he was punished as a juvenile. He was given what is called a fifteen year indeterminate sentence. Let me tell you how that works with a juvenile. You give a juvenile what is called an indeterminate sentence. That means they go to the Texas Youth Commission, which is basically a school for juvenile children. They are held in a facility, it is a guarded facility, like going to a juvenile home. When you are finished as a juvenile to indeterminate sentencing, when you get ready to approach your eighteenth birthday, a decision has to be made of whether or not, after he turns eighteen, you are going to be sentenced to TDC to serve the balance of this fifteen years, be given credit for what you have already served and be sentenced to TDC as an adult; or the other option is that the sentencing Judge can, with a juvenile, can elect to leave them with the Texas Youth Commission, which means they stay under the auspices of the Texas Youth Commission, until they are 21, make probation in all likelihood [sic] prior to 21, and be out on supervised probation in the community, and once they turn 21, they would have no more obligation under the criminal law, they would off [sic] of probation. That is what has happened to Michael Donnell White.

BY [APPELLANT'S COUNSEL]:

I would like to make an objection to the introduction of evidence as far as the codefendant, and I would also make a Motion For Mistrial, on the grounds that the Jury may be prejudiced by the information concerning—

(THE FOLLOWING CONVERSATION WAS HELD AT THE BENCH.)

BY THE COURT:

Okay. Any response?

BY [PROSECUTOR]:

I am simply fixing to question the jury panel about they determine the credibility of the witnesses, that you have got a witness that has an arrangement made for his prior sentence, can they simply decide whether or not they are going to believe a person that, indeed, they may be asked to believe or disbelieve them because they have gotten some plea bargin [sic] agreement deal, just instruct them it is up to them to judge his credibility when he testifies.

BY THE COURT:

That's fine, but that other part, you already told about what has happened. I think that is going pretty far, and I think there is a problem. Now, Mr.

Reeves, I will be glad to instruct them to disregard the last statement by Mr. Brown, then let him start over about the fact that somebody may have been rendered a plea bargin [sic] agreement in this case, would that affect them, and I will be happy to do that.

BY [APPELLANT'S COUNSEL]:

Your Honor, I would ask for an instruction to the jury panel regarding the statement.

BY THE COURT:

Okay. All right. At this time I am going to deny the Defendant's Motion For Mistrial, and Grant the instruction, or the Motion To Instruct The Jury and Grant his Motion, but Deny the Motion For Mistrial.

(END OF CONVERSATION AT THE BENCH.)

BY THE COURT:

Okay. Ladies and gentlemen of the jury panel, at this time I am going to instruct you to disregard the last statement about possible a possible [sic] co-conspirator, or co-defendant, and you are not to consider that for any purpose. You understand? Any of you that can't follow this instruction?

Okay. Mr. [Prosecutor], you can proceed.

BY [PROSECUTOR]:

Thank you, Your Honor.

BY THE COURT:

*Let the record reflect that all jurors shook their head, or there was noone [sic] that expressed they could not follow that instruction.* (emphasis added)

Appellant contends that the prosecutor's statement could have only been made in an attempt to inflame the minds of the jurors in order to secure a favorable verdict and not merely to discuss the need to determine the credibility of witnesses. Appellant argues the jury was allowed to infer appellant's guilt by the reference to the juvenile accomplice and cites several authorities. *Dues v. State,* 634 S.W.2d 304 (Tex.Crim.App.1982), held that the prosecutor's misstatement of law during voir dire denied the defendant a fair trial. In this case, the court found the error

was never corrected and in fact the jury instructions compounded the error. Similarly, *Cook v. State,* 540 S.W.2d 708 (Tex.Crim. App.1976), held that a statement by counsel of what purports to be the law when that law is not contained in the court's jury charge is improper argument. The court found the error was not harmless and denied the defendant a fair trial. As appellant in this case is not claiming the prosecutor made any improper statements of law during voir dire, these cases are inapplicable. In *Thornton v. State,* 542 S.W.2d 181, 183 (Tex.Crim.App. 1976), the court held "it is not permissible to show that another jointly or severally indicted for the same offense has been convicted or acquitted." The argument of the prosecutor was found to have improperly injected new facts into the case when he informed the jury two witnesses were in prison for the same offense. However, this case is also distinguishable from the present case. In *Thornton,* the trial court overruled counsel's objection to the improper argument. Here, however, the court instructed the jury to disregard the improper statement and not to consider it for any purpose.

Appellant believes that the prosecutor's statement on voir dire was harmful; that such injected information would only serve to prejudice appellant's right to a fair trial by an impartial jury; that such instruction did not remove prejudice and could not be cured by an instruction to the jury. Appellant cites *Williams v. State,* 643 S.W.2d 136 (Tex.Crim. App.1982), for the standard of review of the sufficiency of the trial court's instruction to disregard. The court noted it is necessary to judge each such issue upon the particular and unique facts of a case. *Id.*

■ The State, in its brief, admitted the prosecutor's comment about the co-defendant's plea of guilty and sentence to the charge was inappropriate. Although the prosecutor clarified his intent, appellant's defense counsel properly objected and the trial court promptly issued an instruction to disregard. The State maintains the instruction to disregard and the jury's confirmation of the effect of that instruction prove any prejudice caused by the State's error was harmless.

The record reveals the co-defendant testified during trial as to his involvement in the murder and corroborated appellant's guilt.

The record shows defense counsel objected to the prosecutor's improper statement and promptly moved for mistrial. Defense counsel then requested an instruction to the jury which was granted; the motion for mistrial was denied. Appellant does not challenge the denial of the motion for mistrial.

While the prosecutor's statement was improper, an improper statement, comment, or argument when made in voir dire has less impact than the same statement made in final argument which is normally the last thing the jury hears. We have carefully reviewed the improper comment in the context of the entire voir dire examination, the prompt instruction of the court, the intervening trial, and the fact that no further comment was made by either party on the subject, and find any error harmless beyond a reasonable doubt. *See Jackson v. State*, 726 S.W.2d 217, 221 (Tex.App.—Dallas 1987, pet. ref'd). *Mills v. State*, 626 S.W.2d 583, 585 (Tex.App.—Amarillo 1981, pet. ref'd), held:

Our Court of Criminal Appeals has repeatedly held that a juror's knowledge of the conviction of an accused's codefendant would not disqualify him, even though he may have heard the evidence on the trial which resulted in the conviction, unless he formed an opinion which would influence his verdict.

*Calderon v. State*, 847 S.W.2d 377, 380–381 (Tex.App.—El Paso 1993, pet. ref'd), held:

There is a presumption that once it is instructed to disregard, a jury will obey that instruction and the error will be cured except where the objectionable argument or other action is so prejudicial or extreme that its harmful effect on the jury cannot be removed. (Citations omitted) Thus, error contained in improper statements, questions or arguments by a prosecutor can usually be corrected by an instruction to disregard, thereby obviating the need for a mistrial, except in extreme cases where the improper statement, question or argument is clearly calculated to inflame the minds of the jury or so indelibly ingrained in their minds that it is not suscep-

tible to withdrawal or retraction by an instruction to disregard. *Swallow v. State*, 829 S.W.2d 223, 226–27 (Tex.Crim.App. 1992).

*Orosco v. State*, 827 S.W.2d 575, 577 (Tex. App.—Fort Worth 1992, pet. ref'd), *cert. denied*, 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992), sets the standard of review:

Great latitude should be allowed in voir dire examination so that counsel for both the defense and the State have a good opportunity to assess the relative desirability of the venire members. *Battie v. State*, 551 S.W.2d 401, 404 (Tex.Crim.App.1977), *cert. denied*, 434 U.S. 1041, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978). The trial court has discretion to determine the propriety of any question asked and a review of the trial court's action is limited to ascertaining whether the court abused its discretion. *Id.*

*See also Davis v. State*, 894 S.W.2d 471 (Tex. App.—Fort Worth, 1995, no pet.). We therefore conclude that the comment regarding the accomplice was not so prejudicial as to render ineffective the trial court's promptly administered curative instruction. *Zaiontz v. State*, 700 S.W.2d 303, 307 (Tex.App.—San Antonio 1985, pet. ref'd). *See also Wilkerson v. State*, 510 S.W.2d 589, 591–92 (Tex.Crim. App.1974).

As stated, we cannot find that the error complained of by the appellant was so prejudicial that it was not cured by the trial court's instruction and the refusal of the trial court to grant a mistrial was not an abuse of discretion. Therefore, we overrule appellant's point of error one.

■■■ Appellant's point of error two contends that "[t]he evidence was insufficient to prove the appellant committed the offense of capital murder." Appellant's specific complaint taken from his brief states the following:

The offense charged is capital murder and there is no evidence presented outside of the accomplice to connect the Appellant with an intent to rob the victim of his vehicle, and the corroborating evidence is non existent as placing Appellant in pos-

session of any item of the victim which is normally what has been required as in *Jackson v. State,* 645 S.W.2d 303 (Tex.Crim.App.1983).

The record reflects that the juvenile accomplice testified to the fact that appellant's intent upon stopping the victim was to shoot the victim and then take the victim's car. In *Farris v. State,* 819 S.W.2d 490, 506–507 (Tex.Crim.App.1990), *cert. denied,* 503 U.S. 911, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992), *overruled on other grounds by Riley v. State,* 889 S.W.2d 290 (Tex.Crim.App.1993), the Court of Criminal Appeals reaffirmed its holding in *Holladay v. State,* 709 S.W.2d 194, 201 (Tex.Crim.App.1986), that the capital murder statute does not require corroboration of any of the aggravating elements. Put another way, *Farris* and *Holladay* permit a conviction for capital murder to be sustained where the evidence of the aggravating elements are provided solely from the testimony of an accomplice witness without the need for said testimony to be corroborated by any independent evidence. As such, appellant's second point of error is overruled. The judgment and sentence below are affirmed.

AFFIRMED.