**Carroll Dwayne YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–01147–CR.**

Court of Appeals of Texas,
Houston [1st Dist.].

March 29, 2002.

Kenneth W. Smith, Law Office of Kenneth W. Smith, Houston, for Appellant.

Rikke Burke Graber, Assistant District Attorney, Houston, for the State.

Panel consists of Justices TAFT, BRISTER*, and DUGGAN**.

## EN BANC OPINION ON COURT'S MOTION

LEE DUGGAN, JR., Justice.

A jury found appellant, Carroll Dwayne Young, guilty of aggravated sexual assault of a child and assessed his punishment at 75 years confinement and a $5,000 fine. A divided panel of this court voted to affirm the judgment; however, en banc review was granted on the Court's own motion, the panel opinion was withdrawn, and this opinion is substituted in its stead. We reverse and remand.

Appellant's fourth point of error is dispositive of the appeal. In it, appellant asserts the trial court erred in denying his motion for mistrial during jury selection. He contends that prejudicial statements made by a venirewoman were repeated and underscored in the panel's presence by the trial court. We agree.

### Facts and Procedural Background

In 1998, appellant often visited and spent the night at the home of his brother and sister-in-law and their two daughters, the six-year-old complainant, and her one-year-old sister.

The complainant testified to three incidents wherein she stated appellant touched the inside of her female sexual organ. Two of the incidents occurred while she and appellant were alone in a room at her home watching television or playing a video game. The complainant said appellant ceased touching her both times as other adults approached or came into the room. The third incident occurred in a darkened movie theater. Appellant and an adult friend took the complainant and another child to see the movie, "Dr. Doolittle," and the complainant sat in appellant's lap for a better view of the screen. She testified the illicit touching occurred while appellant's friend was gone to the restroom, and that appellant ceased the touching when his friend returned to his seat. The complainant's maternal grandmother testified that the complainant told her of the incidents, and she in turn told her daughter, the complainant's mother.

The complainant's mother reported the incidents to Child Protective Services and took the complainant to the Children's Assessment Center. She was examined and interviewed there by a physician whose medical finding was inconclusive as to sexual abuse. A Houston Police Department detective, assigned to the Assessment Center, testified that appellant consented to an interview, denied the accusations, and agreed to take a polygraph examination. The detective never scheduled the polygraph.

Appellant pleaded not guilty, testified at both guilt-innocence and the punishment hearing, and steadfastly denied touching the complainant in a sexually inappropriate way. He further testified that there was "trouble" between himself and his sister-in-law, the complainant's mother; that she had filed for divorce from appellant's brother; and that, at trial time, she was living with a former boyfriend. Appel-

---

*. The Honorable Scott Brister, who became Chief Justice of the Fourteenth Court of Appeals on July 16, 2001, continues to sit by assignment for the disposition of this case, which was submitted on March 5, 2001.

**. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

lant's brother, the complainant's father, testified that he had never seen appellant do anything sexually inappropriate with complainant and she had never told him about any such incident. Appellant's friend, who accompanied appellant and the complainant to the movie, testified that the complainant sat in appellant's lap to see better, and, when he returned to his theater seat after a trip to the restroom, neither the complainant nor her young friend seemed upset.

The prejudicial statements and appellant's motion for mistrial occurred in the presence of the entire panel during the prosecution's voir dire examination, immediately after the prosecutor had secured the assurance of all veniremembers that they could convict on the credible testimony of a single witness. Witness credibility in the trial of an emotionally-inflammatory offense had thus been underscored as the crucial issue. The following exchange between the trial court and the venirewoman then occurred:

> **THE COURT:** Is it Ms. Valdez?
>
> **VENIREWOMAN:** Yeah. I'm not sure if this is the appropriate time. I've been trying to figure out when it is. But my background, my work—I've worked a lot with inner city youth in a program and *I've worked with a lot of sexual assault children. I just don't think I can be fair. And he needs to have a fair person because I've worked on the children's side.*
>
> **THE COURT:** *I understand.* Are you saying because of that, when you say you can't be fair, does that mean that if the State doesn't prove their case beyond a reasonable doubt, you would find him guilty anyway?
>
> **VENIREWOMAN:** It's like the policeman that you talked about that comes in with a certain level of experience or

knowledge. I just—*I feel that I'm going to be weighed in one way. And I don't think I can be fair.*

> **THE COURT:** *I understand that.* And I'm trying to pinpoint. When you say you can't be fair, that's kind of global. I'm trying to figure out—excuse me— I'm trying to see if—we want to pinpoint you. When you say you can't be fair, *what do you mean you can't be fair?*

(Emphasis added)

Although the trial court twice stated that it understood, it clearly did not. The exceptionally conscientious venirewoman obviously had something very serious to disclose based on her past experience or expertise. She gave the trial court ample warning that, because of her work with "a lot of sexual assault children," she could not be fair to the defendant. If the trial court felt that any further clarification from the venirewoman was necessary, it should have brought the venirewoman to the bench for questioning outside the presence of the entire venire panel. Despite the advance warning, the trial court did not invite the witness to the bench, but had the colloquy continue in the hearing of the entire panel:

> **VENIREWOMAN:** Well, of course, I don't know any details. And it depends on how old the child was. But *what I have found in 25 to 30 years of this work is that usually when a child says something has been done like this, usually the majority of the cases I've worked with, it's the truth.*
>
> **THE COURT:** All right.
>
> **VENIREWOMAN:** So, what I'm trying to say—
>
> **THE COURT:** Excuse me. Let me stop you there. *Are you saying in your 25 to 30 years of work you've never[1] had a situation where a child is found not to be telling the truth?*

---

1. The trial court's paraphrased restatement of

the individual opinion changed the venire-

VENIREWOMAN: Right. Correct.

THE COURT: *So, that's never happened in your 25 or 30 years?*

VENIREWOMAN: No. I'm saying that—that *yes, what you said is true.*

DEFENSE COUNSEL: Your Honor, at this time I'm going to move for a mistrial. This witness has polluted the jury panel.

THE COURT: Excuse me, sir. Approach the bench, please.

(At the bench, on the record)

THE COURT: Yes?

DEFENSE COUNSEL: I move for a mistrial because this witnesses [sic] has been allowed to state in her 25 years, 25 years of work—

THE COURT: Mr. Smith, will you keep your voice down? That's why I asked you to approach the bench.

DEFENSE COUNSEL: That's the point of this motion. The entire jury panel—

THE COURT: I'm asking you to keep your voice down, sir.

DEFENSE COUNSEL: Yes, your Honor. I was looking to see if the jury—if the court reporter can hear me. I'm moving for a mistrial because this witness has been allowed to testify that in her 25 years I worked with children, whenever a child makes an accusation, that that is generally the truth. That witness should have been brought up here, allowed to say that in front of you without polluting the jury panel.

THE COURT: And that's denied.

(Emphasis added)

Thus, during its colloquy with the venirewoman, the trial court twice repeated—

and expanded—the venirewoman's prejudicial statement.

## ANALYSIS

■ Mistrial is the appropriate remedy when, as here, the objectionable events "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *See State v. Cabrera*, 24 S.W.3d 528, 529–30 (Tex.App.-Corpus Christi 2000, pet. ref'd). Although appellant's counsel did not pursue the familiar procedure of objection and request for an instruction to disregard before moving for mistrial, his action forced the trial court to choose between letting the remark stand and declaring a mistrial; moreover, appellant's motion for mistrial preserved error. *See Bryant v. State*, 25 S.W.3d 924, 926 (Tex.App.-Austin 2000, pet. ref'd). The quoted colloquy constituted a record that fully demonstrated the harm. *See Smith v. State*, 907 S.W.2d 522, 527 (Tex. Crim.App.1995). An instruction to disregard could not have cured the prejudice resulting from: (1) the impact of the venirewoman's improper opinion statement, combined with the emphasis given to it by the trial court's double-repetition of the statement; and (2) the fact that the prejudicial opinion addressed precisely the crucial issue of the child complainant's credibility in an essentially two-witness case.

Although the State has not made the argument, the dissenting opinion speculates that the trial court's comments may have been expressed in "an incredulous tone thereby undermining, not reinforcing, the effect of the prospective juror's comments." The dissent notes that the record does not reveal the "tone" of the trial court's voice. If the trial court was,

womans's words (*"usually* the *majority* of the cases I've worked with")* to the even stronger

*("... never* had a situation ...").

in its tone of voice, emphasizing the venirewoman's response, the consequences for appellant were unquestionably severe. Whether or not the trial court *intended* to emphasize the remarks, they were, in fact, emphasized. If the other veniremembers did not understand the venirewoman's statement after the trial court's first inquiry, they surely understood it after the trial court's second and third inquiries.

Even if the trial court was expressing incredulity toward the venirewoman's remarks, the critical fact remains—the trial court's colloquy with the venirewoman placed information before the venire that the State itself could not have gotten into evidence, i.e., *expert opinion testimony that child witnesses in sexual assault cases always tell the truth.* The dissent's speculation suggests that the trial court essentially commented on evidence in order to ridicule or demean a veniremember's prejudicial and otherwise inadmissible opinion. It is impossible to conclude the trial court would hear such an expression of opinion, find its very utterance to be incredible, and then not instruct listening veniremembers to ignore the statement.

More likely, the listening veniremembers accepted their fellow prospective juror's statements as the reasonable voice of experience, or expert opinion; the trial court never told them not to. The venirewoman's testimony that she had 25 to 30 years experience would qualify her in the minds of many persons as an expert on the credibility of child witnesses in sexual abuse cases. Appellant was irreparably harmed by the judicially twice-repeated and enhanced venirewoman's testimony. The prosecution obtained a significant advantage in that it did not have to summon, sponsor, vouch for, or tender for cross-examination an independent witness who

voiced an ultimate opinion on the complainant's credibility—testimony that would have been inadmissible from a credentialed expert. *See Schutz v. State,* 957 S.W.2d 52, 59 (Tex.Crim.App.1997) (holding evidence of truthfulness inadmissable); *Yount v. State* 872 S.W.2d 706, 708 (Tex. Crim.App.1993) (same); *State v. Cabrera,* 24 S.W.3d at 531 (characterizing inadmissibility of evidence of witness's truthfulness as "clear" and "settled").

Whatever the trial court *intended,* it is the *effect* of what the trial court did that is of consequence. The venirewoman's remarks—twice repeated by the court—infringed on appellant's presumption of innocence and could not have been cured by an instruction to disregard. *See Blue v. State,* 41 S.W.3d 129, 132–33 (Tex.Crim. App.2000).

The dissenting opinion cites three decisions as authority that an instruction to disregard such a bombshell statement as this would have been sufficient to cure any harm. *Cuellar v. State,* 943 S.W.2d 487 (Tex.App.-Corpus Christi 1996, pet. ref'd); *McGee v. State,* 923 S.W.2d 605 (Tex.App.-Houston [1st Dist.] 1995, no pet.); *White v. State,* 910 S.W.2d 630 (Tex.App.-Beaumont 1995, no pet.). Each of these cases is readily distinguishable.

*Cuellar* and *McGee* involved uninvited statements by prospective jurors; *White* involved a prosecutor's improper statement during the voir dire. None involved an offense so inflammatory *per se* as aggravated sexual assault of a child. None involved the trial court's participation and aggravation of the error by inviting or repeating the inadmissible statement, thus putting the court's apparent approval on it. None of the volunteered inadmissible statements emphasized a complainant's credibility.

In *Cuellar,* an involuntary manslaughter case, the jury panel was asked if anyone

knew or thought he or she knew the defendant. One prospective juror replied, "Well, if he is the gang member in McAllen, yes. I mean, I don't know him, but I know the boy that he killed." 943 S.W.2d at 489. Cuellar's counsel did not object, or request an instruction to disregard, or move for mistrial. *Id.* On appeal, Cuellar complained for the first time, arguing that the trial court should have instructed the jury panel *sua sponte* to disregard or declare a mistrial. *Id.* The Corpus Christi Court of Appeals overruled Cuellar's complaint, noting, first, that the witness's statement was qualified (["if he is the gang member ..."]) and was not so egregious that an instruction from the trial court to disregard would not have cured it. *Id.* at 490. Second, the opinion further noted that Cuellar's relationship to a gang, if any, had nothing to do with the involuntary manslaughter case, which arose as the result of a traffic collision. *Id.* We note that in *Cuellar* the trial judge did not invite, repeat, or enhance the inadmissible statement, or overrule a motion for mistrial. By contrast, in the instant case, (1) the child complainant's credibility was at the heart of the disputed evidence and the harmful comment was not qualified ("... never had a situation where a child is found not to be telling the truth"); (2) the first degree felony offense of aggravated sexual assault of a child provokes a stronger emotional reaction from prospective jurors than a traffic-related offense; and (3) unlike in *Cuellar*, appellant moved for a mistrial.

In *McGee*, a burglary of a building case, defense counsel asked the venire whether anyone believed the defendant might have a prior conviction, in light of the prosecutor's earlier remarks concerning prior convictions. One venire member answered, "I don't believe it, I know of prior convictions." 923 S.W.2d at 607. The trial court promptly instructed the panel to disregard the response and denied a motion for mistrial. This Court affirmed. The evidence of guilt at the guilt-innocence stage was overwhelming. *Id.* at 608; 609 (Cohen, J., concurring). Justice Cohen noted further in his concurring opinion that the veniremember's statement was plainly harmless at the punishment phase because the jury assessed the minimum punishment allowable. 923 S.W.2d at 609. By contrast with *McGee*, in our case the credibility of the complainant and appellant, the only persons present at the commission of the alleged offenses, was the pivotal issue in determining guilt or innocence, and the prospective juror's statement strongly bolstered the complainant. The sentence of 75 years and a $5,000 fine negated "harmless error" at punishment.

*White*, a capital murder case in which the State did not seek the death penalty, is also readily distinguishable in that the trial court denied the defendant's motion for mistrial, but gave a prompt curative instruction when the defense objected to the prosecutor's voir dire statement advising the jury of a co-defendant's conviction and punishment. 910 S.W.2d at 632–33. The trial court instructed the jury panel to disregard, and had the record reflect that the entire jury panel indicated they would. The evidence showed that the defendant in *White* admitted, both at the time of his arrest and in his written confession, that he shot and killed the complainant. While the co-defendant juvenile testified to the defendant's intent to rob, and to his own involvement, his motive to testify in exchange for his favorable plea bargain was apparent. By contrast, the error in our case was committed by the court, not the prosecutor. The testifying venire member had no improper motive, while the testifying co-defendant's motive in *White* was clear. And unlike the defendant in *White*, appellant never admitted any element of

the crime. He denied it and offered to take a polygraph examination. All these factors make the harm here less curable than in *White*.

We find the reasoning of the Court of Criminal Appeals opinion in *Blue* to be persuasive in this case. In *Blue*, the trial court apologized to a venire panel for their long wait and stated the delay was due to the defendant's indecisiveness on whether to accept a plea bargain. 41 S.W.3d at 130. The trial court also stated that it preferred that the defendant plead guilty. *Id.* The Court of Criminal Appeals held the trial court's comments imparted information to the venire that "*tainted* the presumption of innocence." *Id.* at 132. (emphasis added). Here, the information imparted to the venire, that child witnesses in sexual assault cases always tell the truth, not only *tainted* the presumption of innocence, but actually *infringed* upon it.

In summary, the cases cited by the dissenting opinion are not even tangentially pertinent. In this case, where it was essentially the complainant's word against appellant's, credibility was everything. The trial court, itself, put before the venire information that the State could not have introduced into evidence—the opinion testimony of an expert with "25 to 30 years" experience working with "a lot of sexual assault children" that child witnesses in sexual assault cases always tell the truth. Under the circumstances, appellant could not respond. The error is so egregious that an instruction to disregard would have been futile. The venirewoman's remarks, twice emphasized by the trial court, infringed upon appellant's presumption of innocence. *See id.* at 129.

We sustain appellant's fourth point of error. Because this point is dispositive of the appeal, we decline to address the remaining points of error.

## CONCLUSION

This case vividly illustrates the dangers of questioning individual veniremembers about sensitive or explosive topics in front of an entire venire panel—a practice we strongly discourage. If the trial court felt that further clarification was necessary after the venirewoman said she had worked with "a lot of sexually abused children," and "I just don't think I can be fair," the trial court should have brought her to the bench for further questioning outside the panel's presence. This simple precaution would have precluded the necessity of a mistrial, and thus another trial.

We reverse the judgment and remand the cause to the trial court for a new trial.

En banc consideration was requested.

A majority of the justices of the Court voted to consider the case en banc.

The en banc court consists of Chief Justice SCHNEIDER, and Justices COHEN, MIRABAL, WILSON, HEDGES, TAFT, NUCHIA, JENNINGS, RADACK, DUGGAN, and BRISTER.

Justice TAFT, dissenting from the en banc decision. Justices NUCHIA and BRISTER join Justice TAFT's dissenting opinion.

TIM TAFT, Justice, dissenting.

In this case, one of the prospective jurors stated that she had worked with child sex abuse victims for almost 30 years, and, in her experience, she had never encountered a case in which a child had not been truthful about the abuse. Appellant immediately moved for a mistrial, asserting the prospective juror's statements had polluted the jury panel. Appellant claims the trial court exacerbated the situation by repeating the prospective juror's statements.

Because the record does not reveal the trial court's tone of voice, we cannot say that the trial court's comments were not expressing an incredulous tone thereby undermining, not reinforcing, the effect of the prospective juror's comments. This is not a case like *Blue v. State*, 41 S.W.3d 129 (Tex.Crim.App.2000), in which the trial court's comments were not subject to different interpretations depending on the tone of voice used. We may disagree with the trial court's method of dealing with this situation, but, based on the state of the record before us, we are not in a position to evaluate whether an instruction to disregard would have cured any harm. If, as *Blue* emphasizes, a trial court's statements carry great weight with the venire, a trial court's instruction to disregard must be given at least equally great weight.

While the majority opinion finds inevitable distinctions, there certainly are cases in which instructions to disregard have cured very prejudicial statements during jury selection, at least one of which turned on the tone of voice used. *See Cuellar v. State*, 943 S.W.2d 487, 489–90 (Tex.App.-Corpus Christi 1996, pet. ref'd) (holding that instruction to disregard would have cured harm when, asked if anyone knew defendant, a veniremember responded, "Well, if he is the gang member in McAllen, yes. I mean, I don't know him, but I know the boy that he killed"; emphasizing tone of veniremember's response); *McGee v. State*, 923 S.W.2d 605, 607–08 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (holding that instruction to disregard sufficient to cure harm from remark of veniremember who knew defendant and stated she knew he had prior convictions); *White v. State*, 910 S.W.2d 630, 632–34 (Tex.App.-Beaumont 1995, no pet.) (holding that instruction to disregard cured prejudice from prosecutor's statement during voir dire that evidence would show that appellant's

cousin had been working in cooperation with appellant in commission of charged offense and had already pled guilty). Based on the record before us, I would hold that we simply do not know that this is a case in which an instruction to disregard, had it been requested, could not have cured the prejudice.

Accordingly, I respectfully dissent.