Opinion issued March 29, 2002

 






 

In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-99-01147-CR

____________


CARROLL DWAYNE YOUNG, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court 

Harris County, Texas

Trial Court Cause No. 802,485 






EN BANC OPINION ON COURT'S MOTION 

 A jury found appellant, Carroll Dwayne Young, guilty of aggravated sexual
assault of a child and assessed his punishment at 75 years confinement and a $5,000
fine. A divided panel of this court voted to affirm the judgment; however, en banc
review was granted on the Court's own motion, the panel opinion was withdrawn, and
this opinion is substituted in its stead. We reverse and remand.

 Appellant's fourth point of error is dispositive of the appeal. In it, appellant
asserts the trial court erred in denying his motion for mistrial during jury selection.
He contends that prejudicial statements made by a venirewoman were repeated and
underscored in the panel's presence by the trial court. We agree.

Facts and Procedural Background

 In 1998, appellant often visited and spent the night at the home of his brother
and sister-in-law and their two daughters, the six-year-old complainant, and her one-year-old sister. 

 The complainant testified to three incidents wherein she stated appellant
touched the inside of her female sexual organ. Two of the incidents occurred while
she and appellant were alone in a room at her home watching television or playing a
video game. The complainant said appellant ceased touching her both times as other
adults approached or came into the room. The third incident occurred in a darkened
movie theater. Appellant and an adult friend took the complainant and another child
to see the movie, "Dr. Doolittle," and the complainant sat in appellant's lap for a
better view of the screen. She testified the illicit touching occurred while appellant's
friend was gone to the restroom, and that appellant ceased the touching when his
friend returned to his seat. The complainant's maternal grandmother testified that the
complainant told her of the incidents, and she in turn told her daughter, the
complainant's mother.

 The complainant's mother reported the incidents to Child Protective Services
and took the complainant to the Children's Assessment Center. She was examined
and interviewed there by a physician whose medical finding was inconclusive as to
sexual abuse. A Houston Police Department detective, assigned to the Assessment
Center, testified that appellant consented to an interview, denied the accusations, and
agreed to take a polygraph examination. The detective never scheduled the
polygraph.

 Appellant pleaded not guilty, testified at both guilt-innocence and the
punishment hearing, and steadfastly denied touching the complainant in a sexually
inappropriate way. He further testified that there was "trouble" between himself and
his sister-in-law, the complainant's mother; that she had filed for divorce from
appellant's brother; and that, at trial time, she was living with a former boyfriend. 
Appellant's brother, the complainant's father, testified that he had never seen
appellant do anything sexually inappropriate with complainant and she had never told
him about any such incident. Appellant's friend, who accompanied appellant and the
complainant to the movie, testified that the complainant sat in appellant's lap to see
better, and, when he returned to his theater seat after a trip to the restroom, neither the
complainant nor her young friend seemed upset. 

 The prejudicial statements and appellant's motion for mistrial occurred in the
presence of the entire panel during the prosecution's voir dire examination,
immediately after the prosecutor had secured the assurance of all veniremembers that
they could convict on the credible testimony of a single witness. Witness credibility
in the trial of an emotionally-inflammatory offense had thus been underscored as the
crucial issue. The following exchange between the trial court and the venirewoman
then occurred:

 THE COURT: Is it Ms. Valdez?


 VENIREWOMAN: Yeah. I'm not sure if this is the
appropriate time. I've been trying to
figure out when it is. But my
background, my work - - I've worked
a lot with inner city youth in a program
and I've worked with a lot of sexual
assault children. I just don't think I
can be fair. And he needs to have a
fair person because I've worked on the
children's side.


 THE COURT: I understand. Are you saying because
of that, when you say you can't be fair,
does that mean that if the State doesn't
prove their case beyond a reasonable
doubt, you would find him guilty
anyway?


 VENIREWOMAN: It's like the policeman that you talked
about that comes in with a certain level
of experience or knowledge. I just - - I
feel that I'm going to be weighed in
one way. And I don't think I can be
fair.


 THE COURT: I understand that. And I'm trying to
pinpoint. When you say you can't be
fair, that's kind of global. I'm trying to
figure out - - excuse me - - I'm trying
to see if - - we want to pinpoint you. 
When you say you can't be fair, what
do you mean you can't be fair?


(Emphasis added)

 Although the trial court twice stated that it understood, it clearly did not. The
exceptionally conscientious venirewoman obviously had something very serious to
disclose based on her past experience or expertise. She gave the trial court ample
warning that, because of her work with "a lot of sexual assault children," she could
not be fair to the defendant. If the trial court felt that any further clarification from
the venirewoman was necessary, it should have brought the venirewoman to the
bench for questioning outside the presence of the entire venire panel. Despite the
advance warning, the trial court did not invite the witness to the bench, but had the
colloquy continue in the hearing of the entire panel: 

 VENIREWOMAN: Well, of course, I don't know any details. 
And it depends on how old the child was. But
what I have found in 25 to 30 years of this
work is that usually when a child says
something has been done like this, usually the
majority of the cases I've worked with, it's the
truth.


 THE COURT: All right.


 VENIREWOMAN: So, what I'm trying to say - -


 THE COURT: Excuse me. Let me stop you there. Are you
saying in your 25 to 30 years of work you've
never (1) had a situation where a child is found
not to be telling the truth?


 VENIREWOMAN: Right. Correct.


 THE COURT: So, that's never happened in your 25 or 30
years?


 VENIREWOMAN: No. I'm saying that - - that yes, what you said
is true.

 

 DEFENSE COUNSEL: Your Honor, at this time I'm going to move
for a mistrial. This witness has polluted the
jury panel.


 THE COURT: Excuse me, sir. Approach the bench, please.


 (At the bench, on the record)


 THE COURT: Yes?


 DEFENSE COUNSEL: I move for a mistrial because this witnesses
[sic] has been allowed to state in her 25 years,
25 years of work - -


 THE COURT: Mr. Smith, will you keep your voice down? 
That's why I asked you to approach the
bench.


 DEFENSE COUNSEL: That's the point of this motion. The entire
jury panel - -


 THE COURT: I'm asking you to keep your voice down, sir.


 DEFENSE COUNSEL: Yes, your Honor. I was looking to see if the
jury - if the court reporter can hear me. I'm
moving for a mistrial because this witness has
been allowed to testify that in her 25 years I
worked with children, whenever a child
makes an accusation, that that is generally the
truth. That witness should have been brought
up here, allowed to say that in front of you
without polluting the jury panel.


 THE COURT: And that's denied.


(Emphasis added)


 Thus, during its colloquy with the venirewoman, the trial court twice repeated
- and expanded - the venirewoman's prejudicial statement. 

ANALYSIS


 Mistrial is the appropriate remedy when, as here, the objectionable events "are
so emotionally inflammatory that curative instructions are not likely to prevent the
jury from being unfairly prejudiced against the defendant." See State v. Cabrera, 24
S.W.3d 528, 529-30 (Tex. App.--Corpus Christi 2000, pet. ref'd). Although
appellant's counsel did not pursue the familiar procedure of objection and request for
an instruction to disregard before moving for mistrial, his action forced the trial court
to choose between letting the remark stand and declaring a mistrial; moreover,
appellant's motion for mistrial preserved error. See Bryant v. State, 25 S.W.3d 924,
926 (Tex. App.--Austin 2000, pet. ref'd). The quoted colloquy constituted a record
that fully demonstrated the harm. See Smith v. State, 907 S.W.2d 522, 527 (Tex.
Crim. App. 1995). An instruction to disregard could not have cured the prejudice
resulting from: (1) the impact of the venirewoman's improper opinion statement,
combined with the emphasis given to it by the trial court's double-repetition of the
statement; and (2) the fact that the prejudicial opinion addressed precisely the crucial
issue of the child complainant's credibility in an essentially two-witness case.

 Although the State has not made the argument, the dissenting opinion
speculates that the trial court's comments may have been expressed in "an
incredulous tone thereby undermining, not reinforcing, the effect of the prospective
juror's comments." The dissent notes that the record does not reveal the "tone" of the
trial court's voice. If the trial court was, in its tone of voice, emphasizing the
venirewoman's response, the consequences for appellant were unquestionably severe. 
Whether or not the trial court intended to emphasize the remarks, they were, in fact,
emphasized. If the other veniremembers did not understand the venirewoman's
statement after the trial court's first inquiry, they surely understood it after the trial
court's second and third inquiries.

 Even if the trial court was expressing incredulity toward the venirewoman's
remarks, the critical fact remains - the trial court's colloquy with the venirewoman
placed information before the venire that the State itself could not have gotten into
evidence, i.e., expert opinion testimony that child witnesses in sexual assault cases
always tell the truth. The dissent's speculation suggests that the trial court essentially
commented on evidence in order to ridicule or demean a veniremember's prejudicial
and otherwise inadmissible opinion. It is impossible to conclude the trial court would
hear such an expression of opinion, find its very utterance to be incredible, and then
not instruct listening veniremembers to ignore the statement.

 More likely, the listening veniremembers accepted their fellow prospective
juror's statements as the reasonable voice of experience, or expert opinion; the trial
court never told them not to. The venirewoman's testimony that she had 25 to 30
years experience would qualify her in the minds of many persons as an expert on the
credibility of child witnesses in sexual abuse cases. Appellant was irreparably
harmed by the judicially twice-repeated and enhanced venirewomans's testimony. 
The prosecution obtained a significant advantage in that it did not have to summon,
sponsor, vouch for, or tender for cross-examination an independent witness who
voiced an ultimate opinion on the complainant's credibility -- testimony that would
have been inadmissible from a credentialed expert. See Schutz v. State, 957 S.W.2d
52, 59 (Tex. Crim. App. 1997) (holding evidence of truthfulness inadmissable); Yount
v. State 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (same); State v. Cabrera, 24
S.W.3d at 531 (characterizing inadmissibility of evidence of witness's truthfulness
as "clear" and "settled"). 

 Whatever the trial court intended, it is the effect of what the trial court did that
is of consequence. The venirewoman's remarks - twice repeated by the court -
infringed on appellant's presumption of innocence and could not have been cured by
an instruction to disregard. See Blue v. State, 41 S.W.3d 129, 132-33 (Tex. Crim.
App. 2000). 

 The dissenting opinion cites three decisions as authority that an instruction to
disregard such a bombshell statement as this would have been sufficient to cure any
harm. Cuellar v. State, 943 S.W.2d 487 (Tex. App.--Corpus Christi 1996, pet. ref'd);
McGee v. State, 923 S.W.2d 605 (Tex. App.--Houston [1st Dist.] 1995, no pet.);
White v. State, 910 S.W.2d 630 (Tex. App.--Beaumont 1995, no pet.). Each of
these cases is readily distinguishable.

 Cuellar and McGee involved uninvited statements by prospective jurors; White
involved a prosecutor's improper statement during the voir dire. None involved an
offense so inflammatory per se as aggravated sexual assault of a child. None
involved the trial court's participation and aggravation of the error by inviting or
repeating the inadmissible statement, thus putting the court's apparent approval on
it. None of the volunteered inadmissible statements emphasized a complainant's
credibility.

 In Cuellar, an involuntary manslaughter case, the jury panel was asked if
anyone knew or thought he or she knew the defendant. One prospective juror replied,
"Well, if he is the gang member in McAllen, yes. I mean, I don't know him, but I
know the boy that he killed." 943 S.W.2d at 489. Cuellar's counsel did not object,
or request an instruction to disregard, or move for mistrial. Id. On appeal, Cuellar
complained for the first time, arguing that the trial court should have instructed the
jury panel sua sponte to disregard or declare a mistrial. Id. The Corpus Christi Court
of Appeals overruled Cuellar's complaint, noting, first, that the witness's statement
was qualified (["if he is the gang member. . . "]) and was not so egregious that an
instruction from the trial court to disregard would not have cured it. Id. at 490. 
Second, the opinion further noted that Cuellar's relationship to a gang, if any, had
nothing to do with the involuntary manslaughter case, which arose as the result of a
traffic collision. Id. We note that in Cuellar the trial judge did not invite, repeat, or
enhance the inadmissible statement, or overrule a motion for mistrial. By contrast,
in the instant case, (1) the child complainant's credibility was at the heart of the
disputed evidence and the harmful comment was not qualified ("...never had a
situation where a child is found not to be telling the truth"); (2) the first degree felony
offense of aggravated sexual assault of a child provokes a stronger emotional reaction
from prospective jurors than a traffic-related offense; and (3) unlike in Cuellar,
appellant moved for a mistrial.

 In McGee, a burglary of a building case, defense counsel asked the venire
whether anyone believed the defendant might have a prior conviction, in light of the
prosecutor's earlier remarks concerning prior convictions. One venire member
answered, "I don't believe it, I know of prior convictions." 923 S.W.2d at 607. The
trial court promptly instructed the panel to disregard the response and denied a
motion for mistrial. This Court affirmed. The evidence of guilt at the guilt-innocence
stage was overwhelming. Id. at 608; 609 (Cohen, J., concurring). Justice Cohen
noted further in his concurring opinion that the veniremember's statement was plainly
harmless at the punishment phase because the jury assessed the minimum punishment
allowable. 923 S.W.2d 609. By contrast with McGee, in our case the credibility of
the complainant and appellant, the only persons present at the commission of the
alleged offenses, was the pivotal issue in determining guilt or innocence, and the
prospective juror's statement strongly bolstered the complainant. The sentence of 75
years and a $5,000 fine negated "harmless error" at punishment.

 White, a capital murder case in which the State did not seek the death penalty,
is also readily distinguishable in that the trial court denied the defendant's motion for
mistrial, but gave a prompt curative instruction when the defense objected to the
prosecutor's voir dire statement advising the jury of a co-defendant's conviction and
punishment. 910 S.W.2d at. 632-33. The trial court instructed the jury panel to
disregard, and had the record reflect that the entire jury panel indicated they would. 
The evidence showed that the defendant in White admitted, both at the time of his
arrest and in his written confession, that he shot and killed the complainant. While
the co-defendant juvenile testified to the defendant's intent to rob, and to his own
involvement, his motive to testify in exchange for his favorable plea bargain was
apparent. By contrast, the error in our case was committed by the court, not the
prosecutor. The testifying venire member had no improper motive, while the
testifying co-defendant's motive in White was clear. And unlike the defendant in
White, appellant never admitted any element of the crime. He denied it and offered
to take a polygraph examination. All these factors make the harm here less curable
than in White.

 We find the reasoning of the Court of Criminal Appeals opinion in Blue to be
persuasive in this case. In Blue, the trial court apologized to a venire panel for their
long wait and stated the delay was due to the defendant's indecisiveness on whether
to accept a plea bargain. 41 S.W.3d at 130. The trial court also stated that it
preferred that the defendant plead guilty. Id. The Court of Criminal Appeals held the
trial court's comments imparted information to the venire that "tainted the
presumption of innocence." Id. at 132. (emphasis added). Here, the information
imparted to the venire, that child witnesses in sexual assault cases always tell the
truth, not only tainted the presumption of innocence, but actually infringed upon it.

 In summary, the cases cited by the dissenting opinion are not even tangentially
pertinent. In this case, where it was essentially the complainant's word against
appellant's, credibility was everything. The trial court, itself, put before the venire
information that the State could not have introduced into evidence -- the opinion
testimony of an expert with "25 to 30 years" experience working with "a lot of sexual
assault children" that child witnesses in sexual assault cases always tell the truth. 
Under the circumstances, appellant could not respond. The error is so egregious that
an instruction to disregard would have been futile. The venirewoman's remarks,
twice emphasized by the trial court, infringed upon appellant's presumption of
innocence. See id. at 129.

 We sustain appellant's fourth point of error. Because this point is dispositive
of the appeal, we decline to address the remaining points of error. 

CONCLUSION


 This case vividly illustrates the dangers of questioning individual
veniremembers about sensitive or explosive topics in front of an entire venire panel
- a practice we strongly discourage. If the trial court felt that further clarification was
necessary after the venirewoman said she had worked with "a lot of sexually abused
children," and "I just don't think I can be fair," the trial court should have brought her
to the bench for further questioning outside the panel's presence. This simple
precaution would have precluded the necessity of a mistrial, and thus another trial.

 We reverse the judgment and remand the cause to the trial court for a new trial.






 Lee Duggan, Jr. 


 Justice


Panel consists of Justices Taft, Brister (2)
, and Duggan. (3)


En banc consideration was requested.


A majority of the justices of the Court voted to consider the case en banc.


The en banc court consists of Chief Justice Schneider, and Justices Cohen, Mirabal,
Wilson, Hedges, Taft, Nuchia, Jennings, Radack, Duggan, and Brister. 


Justice Taft, dissenting from the en banc decision. Justices Nuchia and Brister join
Justice Taft's dissenting opinion.


Publish. Tex. R. App. P. 47.4.


1. The trial court's paraphrased restatement of the individual opinion changed the
venirewomans's words ("usually the majority of the cases I've worked with")
to the even stronger ("... never had a situation...").
2. The Honorable Scott Brister, who became Chief Justice of the Fourteenth
Court of Appeals on July 16, 2001, continues to sit by assignment for the
disposition of this case, which was submitted on March 5, 2001.

3. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.