

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00139-CR
_____

ANTHONY LAVELLE CASTERBERRY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. DC78-CR2021-0399

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

## I. Introduction

A jury convicted Appellant Anthony Lavelle Casterberry of aggravated assault with a deadly weapon, a second-degree felony, after he wounded his roommate Thomas Fowler with a knife.[1] *See* Tex. Penal Code Ann. § 22.01(a)(1) (defining assault as intentionally, knowingly, or recklessly causing bodily injury to another), § 22.02(a)–(b) (defining aggravated assault as an assault in which a person causes serious bodily injury to another or uses or exhibits a deadly weapon). During his punishment trial to the bench, Casterberry pleaded "not true" to six enhancement paragraphs,[2] but the trial court found them true and assessed his punishment at confinement for life. *See id.* § 12.42(d) (describing enhancement of punishment range to 25–99 years' confinement or life when defendant has been convicted of at least two prior and sequential felony offenses).

In a single point, Casterberry complains that the trial court abused its discretion by denying his motion for mistrial during Fowler's testimony because it "was so

---

[1]Casterberry was charged in the same indictment with the aggravated assault of his girlfriend Jackie arising from the same incident. On the day trial began, the trial court granted the State's motion to dismiss the indictment's count involving Jackie.

[2]The enhancement paragraphs alleged that Casterberry had been convicted in Illinois of the following offenses: felony telephone harassment in July 2016; murder and armed violence in February 1999; aggravated battery and unlawful possession of a weapon by a felon in February 1997; and manufacturing or delivering a controlled substance in December 1994.

emotionally inflammatory that the curative instructions w[ere] not likely to prevent the jury from being unfairly prejudiced." Because Casterberry did not present this argument to the trial court and because the same information was allowed in without objection, we overrule his sole point and affirm the trial court's judgment.

## II. Background

During opening statements, the prosecutor told the jurors that they would hear that Casterberry had cut Fowler "centimeters from . . . a major artery." Casterberry did not object. Jackie's sister Karen, the second witness during the State's case in chief, testified that Casterberry had sliced Fowler's neck, causing him to bleed a lot. Her 911 call was admitted into evidence and published to the jury.

Fowler testified that Casterberry had "swung and cut" his neck when he tried to interfere in a fight between Casterberry and Jackie. He then testified as follows about his injury; we have italicized the sole statement about which Casterberry complains on appeal:

> Q. So you didn't know your neck was cut until after --
>
> A. The fact it happened, yeah.
>
> Q. How did you find out your neck was cut?
>
> A. I touched my neck and my whole hand like sunk into my neck because it was split open.
>
> Q. Now, you're holding the left side of your neck?
>
> A. Yeah.
>
> Q. Do you have -- Is that a scar from it?

3

A. Yeah, it's right there.

Q. Did you go and get medical treatment for that?

A. Yeah, I had two surgeries. *And they said he was half-a-centimeter away from killing me.* [Emphasis added.]

Q. I'll show you what's been marked as State's –

[Defense counsel]: Your Honor, I'll object to that as hearsay.

THE COURT: Sustained.

[Defense counsel]: And I'll ask that the jury be instructed to disregard.

THE COURT: The jury is instructed to disregard what was said by any medical personnel at the hospital.

[Defense counsel]: And I'm obligated to ask for a mistrial.

THE COURT: That's denied.[3]

Q. (By [prosecutor]) Mr. Fowler, don't -- You can't talk to us about what anybody's told you.

A. Okay.

After Casterberry's hearsay objection, Fowler again testified—without objection—that he had two surgeries, and he stated that he ended up with twelve staples in his neck. He was allowed to step down from the witness stand to show the jury his scar. The prosecutor subsequently recalled Fowler to testify that his injuries

---

[3] *See, e.g.*, *Hernandez v. State*, 538 S.W.3d 619, 623 (Tex. Crim. App. 2018) (noting the traditional three steps of error preservation: objection, instruction to disregard, and motion for mistrial).

4

had been painful and that he could not eat anything solid for around a month until his staples were removed.

Casterberry also did not object during the testimony of responding officer Michael Crook, who stated that when he ordered Casterberry to drop the knife, Casterberry replied, "I ain't dropping sh*t. This is suicide by cop. You're gonna have to kill me."[4] The knife—a Gerber multi-tool—was admitted into evidence, and Officer Crook testified that a knife blade is a deadly weapon and that the Gerber multi-tool's blade was capable of causing death or serious bodily injury.

Over Casterberry's objection, the trial court admitted and allowed publication to the jury of a recording of an eighteen-minute jail phone call between Jackie and Casterberry in which Casterberry acknowledged that he would be found guilty if Fowler testified. The jury deliberated for forty-nine minutes before finding Casterberry guilty of the aggravated assault of Fowler.

### III. Discussion

Casterberry argues that the trial court abused its discretion by denying his motion for mistrial during Fowler's testimony because Fowler's statement "was so emotionally inflammatory that the curative instructions w[ere] not likely to prevent the jury from being unfairly prejudiced." The State responds that Casterberry failed to preserve this complaint because—among other things—his argument on appeal does

---

[4]Fowler also testified without objection that when the police arrived that night, Casterberry tried to get them to shoot him because "he wanted suicide by police."

5

not comport with his objection in the trial court. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

We review a trial court's ruling on a motion for mistrial both for an abuse of discretion and in light of the arguments that were before the trial court at the time that it ruled. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004) ("The appellate court may not fault the trial court on the basis of arguments not presented to the trial court."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

For example, in *Wead*, the prosecutor observed during closing arguments that the defendant is "sitting right here now looking like he really doesn't care one way or another what happens here today." 129 S.W.3d at 128. Defense counsel objected, stating, "I'm gonna object to the attack on the defendant as improper argument." *Id.* The trial court sustained the objection, instructed the jury to "disregard the prosecutor's last comment about the defendant's appearance," and denied the

6

defense's motion for mistrial. *Id.* The Corpus Christi–Edinburg court reversed the trial court's judgment based on the mistrial ruling after concluding that the prosecutor's remark had been an improper comment on the defendant's election not to testify. *Id.* at 128–29. The Court of Criminal Appeals reversed, holding that because the appellant had not made a failure-to-testify argument in the trial court, the court of appeals had erred by considering that argument. *Id.* at 130 ("Appellant's complaint, in context, appeared to be that the prosecutor was commenting improperly on appellant's courtroom appearance or demeanor."). It further determined that nothing in the record supported reaching the failure-to-testify conclusion and that a reasonable trial judge could have concluded that an instruction to disregard would effectively remove any possible prejudice caused by the prosecutor's comment. *Id.*

Casterberry refers us to *Bauder v. State*, 921 S.W.2d 696 (Tex. Crim. App. 1996), *overruled by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007),[5] and *State v. Cabrera*, 24 S.W.3d 528, 529–30 (Tex. App.—Corpus Christi–Edinburg 2000, pet. ref'd), to support his argument that his mistrial request should have been granted, but these cases focus on prosecutorial misconduct in seeking to induce a defense-

---

[5]In *Lewis*, the court overruled *Bauder* and held that double jeopardy bars retrial after a defendant successfully moves for mistrial *only* when it is shown that the prosecutor engaged in conduct that was intended to provoke the defendant into moving for a mistrial. 219 S.W.3d at 336–37 (citing *Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S. Ct. 2083, 2091 (1982)).

requested mistrial.[6] *See Bauder*, 921 S.W.2d at 699–700;[7] *Cabrera*, 24 S.W.3d at 532 (relying on *Bauder* prior to its overruling by *Lewis*). The case before us involves not prosecutorial misconduct but rather an instance of a witness's blurting out hearsay. *Cf. Taylor v. State*, No. 02-16-00299-CR, 2017 WL 5894923, at *3 (Tex. App.—Fort Worth Nov. 30, 2017, pet. ref'd) (mem. op., not designated for publication) (stating that the prosecutor acted deliberately in eliciting improper information by asking a leading question about it and noting, "This was not an instance of a witness's inadvertently blurting out the wrong information").

Casterberry also refers us to *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992),[8] *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998),[9] *Cano v. State*,

---

[6]Casterberry also refers us to *Young v. State*, 73 S.W.3d 482, 485 (Tex. App.—Houston [1st Dist.] 2002), a child-sexual-abuse case in which our sister court held that prejudicial statements made by a venireperson and the trial court during jury selection could not have been cured by an instruction to disregard. *Id.* at 484–86, 488. The Court of Criminal Appeals disagreed and reversed the intermediate court's decision after concluding that an instruction to disregard would have cured the prejudice. *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004).

[7]In *Bauder*, the court also recited the general rule that "[b]ecause curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted under Texas law." 921 S.W.2d at 700.

[8]In *Kemp*, a death-penalty capital-murder case, the appellant complained that the trial court had erred by denying a mistrial after the State's witnesses testified that he had a prior felony conviction in violation of his motion in limine. 846 S.W.2d at 308. The court concluded that "the uninvited and unembellished reference to appellant's prior incarceration—although inadmissible—was no[t] so inflammatory as to undermine the efficacy of the trial court's instruction to disregard." *Id.*

8

3 S.W.3d 99, 109 (Tex. App.—Corpus Christi–Edinburg 1999, pet. ref'd),[10] and *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994),[11] all of which are extraneous-offense cases. However, the testimony to which Casterberry objected did not refer to or imply an *extraneous* offense. Rather, Fowler's testimony referred to the severity of the injury he received during the *charged* offense.

As set out above, it is clear that the parties understood that the objection was to hearsay—not to the statement's being unfairly prejudicial[12]—*cf.* Tex. R. Evid. 403,

---

[9]In *Rojas*, another death-penalty capital murder case, the appellant argued that the trial court had erred by denying a mistrial after sustaining an objection to a Texas Ranger's testimony that the victim wanted the appellant to move out "because of his past anger, his past violence," as an inadvertent extraneous-offense reference. 986 S.W.2d at 243, 250. The court concluded that the comment was not a concrete reference to an extraneous offense but rather vague speculation that the trial court's prompt instruction to disregard had cured. *Id.* at 250.

[10]In *Cano*, a drug-delivery case, in response to the prosecutor's question, "Why were you watching their house?" the testifying detective stated, "On occasions, we'd received information that . . . they were dealing narcotics out of their residence," an extraneous offense. 3 S.W.3d at 109. The court held that assuming admission of the testimony was error, its admission did not cause the degree of incurable prejudice that would justify a mistrial. *Id.*

[11]In *Kipp*, an indecency case, the appellant complained of the admission of evidence implicating him in vandalism or criminal-mischief extraneous offenses. 876 S.W.2d at 339. The court held that although the prosecutor had specifically elicited the testimony, "it was nevertheless a rather vague reference, did not directly implicate [the] appellant, and did not include any facts giving credence thereto," and that the instruction to disregard sufficiently cured any error. *Id.*

[12]In contrast, in his appellate brief, Casterberry argues that the hearsay statement "changed the nature of [Fowler's] testimony to [his] being a half centimeter away from being *murdered*."

9

and nothing in the record indicates that the jury failed to follow the trial court's instruction to disregard.

The record also reflects that essentially the same facts could have been observed by the jury from other, unchallenged evidence. *See Redmond v. State*, 629 S.W.3d 534, 547 (Tex. App.—Fort Worth 2021, pet. ref'd) (citing *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998)); *see Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (noting that erroneously admitting evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling). That is, Fowler testified—without objection—that he had endured two surgeries resulting in 12 staples in his neck and that he had been unable to eat solid food until the staples were removed, he showed his scar to the jury, and the jury viewed the knife that had caused the injury. From this evidence, the jury could have reasonably concluded that Fowler's injury had been near life-threatening.

We agree with the State that Casterberry has failed to preserve his complaint for our review, and we overrule his sole point.

## IV. Conclusion

Having overruled Casterberry's sole point, we affirm the trial court's judgment.

                                        /s/ Elizabeth Kerr
                                        Elizabeth Kerr
                                        Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 28, 2022