NUMBER 13-01-804-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG




DANIEL HERNANDEZ, Appellant, 

v.



THE STATE OF TEXAS, Appellee.




On appeal from the 275th District Court

of Hidalgo County, Texas.








O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Castillo




 Opinion by Chief Justice Valdez 



The appellant, Daniel Hernandez, was convicted of one count of aggravated sexual assault and one count of indecency with
a child. Tex. Pen. Code Ann. §§ 22.011, 21.11 (Vernon Supp. 2000). Through six issues, appellant argues: (1) the trial
court committed reversible error when it allowed closed-circuit television testimony of the victim accusing him of sexual
assault and indecency with a child; (2) the judgment violates the double jeopardy clause of the United States Constitution;
(3) the trial court committed reversible error in failing to redact a portion of the appellant's statement to police; (4) the trial
court committed reversible error in not including a reasonable doubt instruction for extraneous bad acts in the punishment
charge; (5) the trial court committed reversible error in not granting a new trial because the jury charge included a reference
to good-conduct time; and (6) appellant's counsel was ineffective. We affirm. (1) 

I. FACTUAL AND PROCEDURAL HISTORY 

 At trial, Rebecca Krska, B.H.'s mother testified that on March 13, 2001 she found B.H. in the bathroom crying and noticed
blood stains on B.H.'s underwear. B.H. was seven at the time. B.H. told Ms. Krska that the appellant, B.H.'s father, put his
finger on her sexual organ. Ms. Krska took B.H. to the hospital where she was examined by a sexual assault nurse. 

 Nurse Lorena Guerrero, the nurse who examined B.H., testified B.H. told her appellant touched her sexual organ, removed
her panties and shorts, and touched her sexual organ again. B.H. also told Guerrero appellant touched her with his finger,
and the touching hurt her. During her physical examination of B.H., Guerrero found blood in B.H.'s urine and redness on
her sexual organ and irritation on the hymen, located about an inch and a half inside B.H.'s sexual organ. 

 During the trial, the trial court held a hearing on the State's motion to introduce B.H.'s testimony via closed-circuit
television. At the hearing on the motion, B.H.'s grandmother testified her grandchild was upset because her father was in
jail. Ms. Krska testified B.H. cried and was upset because she saw her father on trial. She also opined it would be cruel
and traumatic for B.H. to testify in front of her father. B.H. was also called to testify but would not speak at first. B.H.
eventually testified she was uncomfortable testifying about the incident in front of her father and was afraid to testify about
the assault. At the conclusion of the hearing, the trial court approved the request for closed-circuit testimony. B.H. then
testified that her father touched her on her sexual organ.

 The State also introduced a statement made by appellant. Although appellant did not admit committing the alleged acts in
his statement, he did say he could not deny the charges against him because he had "no recollection of a lot of things." In
his statement, he attributed his lack of memory to his heavy use of alcohol, marijuana, and cocaine during the time in
question. 

 At the conclusion of the trial, the jury found appellant guilty and sentenced him to thirty years imprisonment for
aggravated sexual assault and ten years imprisonment for indecency with a child. 

II. ANALYSIS

A. Right to Confrontation



 In his first issue, appellant argues the trial court violated his Sixth Amendment right to confront his accuser when it
allowed B.H. to testify through closed-circuit television. 

 The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with
the witnesses against him." U.S. Const. amend. VI; Maryland v. Craig, 497 U.S. 836, 843 (1990). However, a defendant's
right to confront an accusatory witness may be satisfied absent a face-to-face confrontation at trial if it is both necessary to
further an important public policy and the reliability of the testimony is otherwise assured. Craig, 497 U.S. at 850; Marx v.
State, 987 S.W.2d 577, 580 (Tex. Crim. App.1999). 

 It may be necessary for a child victim of sexual abuse to testify through closed-circuit television in order to protect the
child from the trauma of testifying in open court if the trial court determines: (1) the use of the procedure is necessary to
protect the welfare of the particular child witness who seeks to testify; (2) the child witness would be traumatized by the
presence of the defendant; and (3) the trauma would be more than de minimis, i.e., more than mere nervousness or
excitement or some reluctance to testify. Craig, 497 U.S. at 850; Lively v. State, 968 S.W.2d 363, 366 (Tex. Crim. App.
1998);Hightower v. State, 822 S.W.2d 48, 51 (Tex. Crim. App. 1991). The reliability of the child's testimony may be
assured through the combined effect of the witness's testimony under oath, cross-examination, and the ability of the
fact-finder to observe the child's demeanor. See Craig, 497 U.S. at 846; Marx, 987 S.W.2d at 581; Lively, 968 S.W.2d at
366. We review the record to determine if the trial court abused its discretion in allowing B.H. to testify through
closed-circuit television. See Hightower, 822 S.W.2d at 53. 

 During the hearing, the trial court heard evidence showing the testimony by closed-circuit television was necessary. Both
B.H.'s mother and grandmother testified B.H. was very upset about appellant being in jail and on trial. B.H.'s initial
unwillingness to testifiy and her mother's testimony that she cried when she saw appellant on trial showed the potential for
trauma was more than de minimis. B.H.'s own testimony that she was scared to testify and uncomfortable testifying in
front of appellant further established the need for closed-circuit television. 

 Moreover, the reliability of B.H.'s testimony was assured during trial. B.H. took an oath to tell the truth before she gave
her closed-circuit testimony. B.H. was cross-examined by appellant's trial counsel, and the jury observed her demeanor
while she testified through the closed-circuit television. 

 We hold the trial court did not abuse its discretion when it allowed B.H. to testify through closed-circuit television.
Appellant's first issue is overruled.

B. Double Jeopardy

 Appellant's second issue argues his convictions for aggravated sexual assault and indecency with a child violate the double
jeopardy clause of the Fifth Amendment because the two convictions arose from one act. According to appellant, he should
have been convicted of indecency with a child or aggravated sexual assault, but not both. 

 Appellant did not object to a double jeopardy issue at trial. We therefore look to see if appellant can raise the issue for the
first time on appeal. An appellant can raise a double jeopardy challenge for the first time on appeal if: (1) the undisputed
facts show the double jeopardy violation is clearly apparent on the face of the record; and (2) when enforcement of the
usual rules of procedural default serve no legitimate state interest. Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App.
2000). An appellant meets this test when the charged crimes are heard in front of the same judge and jury and arise out of
the same criminal transaction because the trial court is charged with constructive knowledge of the double jeopardy claim.
Demoss v. State, 12 S.W.3d 553, 560 (Tex. App.-San Antonio 1999, pet ref'd); Beltran v. State, 30 S.W.3d 532, 533 (Tex.
App.-San Antonio 2000, no pet.). 

 Here, a double jeopardy violation is not clearly apparent on the face of the record. A violation of the double jeopardy
clause occurs when the evidence establishes the defendant committed only one offense but he is convicted of both
indecency with a child and aggravated sexual assault. Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App.1998).
However, evidence of separate and distinct acts, even if committed in close temporal proximity, may lawfully give rise to
the two convictions. Hutchins v. State, 992 S.W.2d 629, 633 (Tex. App.-Austin 1999, pet. ref'd). For example, inHutchins,
the court held that evidence the defendant touched the victim's genitals with his fingers and penetrated the victim's genitals
with his penis established separate and distinct acts that would support multiple convictions. Id. at 633.

 In this case, the evidence presented by the State showed appellant performed separate and distinct acts. Nurse Guerrero
testified B.H. said appellant touched her while she had her panties or shorts on and then again after her panties or shorts
were removed. The medical evidence supported these statements. Nurse Guerrero found redness on B.H.'s labia
andirritation inside her vagina. 

 Because the record shows evidence of at least two distinct acts that could support the two convictions, no double jeopardy
violation is clearly apparent on the face of the record. Thus, appellant cannot raise this claim for the first time on appeal.
We overrule appellant's second issue. 

C. Reference to Cocaine and Marijuana Use 

 In his third issue, appellant asserts it was reversible error for the trial court to overrule his request to redact the portion of
his statement that referred to "marijuana and cocaine" use. Appellant asserts these references were both irrelevant and
highly prejudicial. 

 We review the admission of extraneous offense evidence for an abuse of discretion. Roethel v. State, 80 S.W.3d 276, 280
(Tex. App.-Austin 2002, no pet.). We will affirm the trial court's decision if it is within the zone of reasonable
disagreement. Id. 

 The test for admission of extraneous evidence is two-pronged. Hernandez v. State, 817 S.W.2d 744, 746 (Tex.
App.-Houston [1st Dist.] 1991, no pet.). First, the court must determine if the extraneous offense is relevant to a material
issue in the case, other than the defendant's character. See Tex. R. Evid. 404(b); Hernandez, 817 S.W.2d at 746. Second,
the court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair
prejudice. Tex. R. Evid. 403; Hernandez, 817 S.W.2d at 746. 

1. Relevance

 Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence
to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid.
401. However, an extraneous offense is not admissible as character evidence to show the accused acted in conformity with
that offense. See Tex. R. Evid. 404(b); see also Arthur v. State, 11 S.W.3d 386, 390 (Tex. App.-Houston [14th Dist.] 2000,
pet. ref'd). An extraneous offense may be admissible for other purposes such as to show proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or fraud. Tex. R. Evid. 404(b); see also Arthur, 11
S.W.3d at 390; Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998). 

 Courts also allow "same transaction contextual evidence" as a narrative neccesity exception under 404(b). Heiman v.
State, 923 S.W.2d 622, 626 (Tex. App.-Houston [1st Dist.] 1995, pet. ref'd). "Same transaction contextual evidence" is
admissible when the "facts and circumstances of the instant offense would make little or no sense without also bringing in
the same transaction contextual evidence." Id. at 625. The reason for this exception is because in "narrating the one it is
impracticable to avoid describing the other." Id. In Heiman, the court found evidence that the defendant injected cocaine
into himself and the victim at the time he committed the crime of indecency with a child was admissible as "same
transaction contextual evidence." Id. at 625-26.

 Here, appellant objected to admission of a statement where he told police he was under the influence of alcohol and drugs.
The statement reads: 

Being under the influence of alcohol heavily every day, I'm talking about drinking at least up to about ten (10) to fifteen
(15) twenty four (24) ounce cans of beer with my medications mixed with this, and marijuana and cocaine, I cannot deny
what I'm being charged with because of the fact of me being so intoxicated daily. Because of the intoxication daily, I have
no recollection of a lot of things. I know it's not normal. (Emphasis added.) 



Appellant objected only to the phrase "marijuana and cocaine." The trial court overruled appellant's objection and allowed
the State to introduce appellant's statement into the record. 

 Appellant's statement to police referring to cocaine and marijuana use is relevant because it tended to show how the
charged offenses unfolded and progressed. See id. at 625. The evidence was also relevant because it tended to show
appellant's state of mind at the time of the offense. The record does not show that the trial court abused its discretion when
it found the extraneous acts were relevant apart from showing that appellant acted in conformity. 

2. Danger of Unfair Prejudice

 Next, we consider whether the trial court abused its discretion when it determined the extraneous acts mentioned in
appellant's statement were not substantially more prejudicial than probative. Courts consider several factors when
determining whether the prejudicial effect of the evidence substantially outweighs its probative value: (1) how compelling
evidence of the extraneous offense serves to make a fact of consequence more or less probable; (2) the potential of the
extraneous offense evidence to impress the jury in some irrational but indelible way; (3) the trial time that the proponent
will require to develop evidence of the extraneous misconduct; and (4) the proponent's need for the extraneous transaction
evidence. Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). We balance these factors to determine whether
the trial court abused its discretion in admitting the evidence of the extraneous acts. Id. 

 We address the first and fourth factors together. Although the State had circumstantial evidence including medical reports,
testimony from the examining nurse, and investigating officer proving the sexual abuse occurred, the only direct evidence
appellant committed the abuse was B.H.'s testimony. This required the jury to weigh the credibility of B.H. to determine
whether appellant in fact sexually abused his daughter. See id. (noting "that in prosecution for sexual offenses, a successful
conviction often turns on whether the jury believes the complainant, turning the trial into a swearing match between the
complainant and defendant.") Appellant's statement to police referencing marijuana and cocaine use is compelling
evidence because it helps explain how a father can commit such crimes against his own daughter. We find the first and
fourth factors weigh in favor of admitting the extraneous acts.

 The second factor also weighs in favor of allowing the extraneous acts into evidence. In his statement, appellant referred
to marijuana and cocaine use to attempt to explain his lack of memory. As introduced, the evidence of drug use was not
likely to impress the jury in some irrational and indelible manner. 

 Finally, the time necessary to develop evidence of extraneous offenses weighs in favor of the State. The evidence of
marijuana and cocaine use was introduced in the statement. The State did not utilize any time outside of introducing the
statement to develop evidence of extraneous offenses. 

 Balancing these factors, we hold the trial court did not abuse its discretion when it determined that appellant's extraneous
acts were not more prejudicial than probative. Appellant's third issue is overruled.

D. No Reasonable Doubt Instructions for Extraneous Offenses

 Appellant's fourth issue on appeal argues the trial court committed reversible error when it failed to include a reasonable
doubt instruction regarding appellant's extraneous crimes and bad acts. He argues no instructions were given for the
following: (1) conviction for aggravated assault; (2) conviction for driving while intoxicated; (3) drinking and smoking as
a seventeen-year old; (4) behaving violently at a hospital; (5) failure to report as a probationer; and (6) testing positive for
cocaine.

 A trial court is required to instruct a jury during the punishment phase that relevant extraneous crimes and bad acts may be
considered only if they find beyond a reasonable doubt that the defendant committed those acts. Tex. Code Crim. Proc.
Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2003). Article 37.07, section 3(a) does not require the trial court to give
instructions for prior convictions. Id. Failure to instruct the jury where required under this statute is error. Ellison v. State,
86 S.W.3d 226, 228 (Tex. Crim. App. 2002). 

 The error, however, will be reviewed under the egregious harm standard if the defendant fails to preserve the issue for
appeal. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Courts review the entire jury
charge, the state of the evidence, including contested issues, arguments of counsel, and any other relevant information to
determine if the omission of the jury charge caused appellant to suffer egregious harm. Jones v. State, No.
05-02-00063-CR, 2003 Tex. App. LEXIS 3846, at *21 (Dallas May 6, 2003). 

 The record shows no reasonable doubt instructions were given for the extraneous offenses cited by appellant. Although no
instructions were needed for the first two offenses because they were convictions, the instructions should have been given
for the remaining offenses. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2003); Jones, 2003 Tex. App.
Lexis 3846, at *21. However, appellant failed to object to the omission of the jury instruction at trial. We therefore look to
see if the appellant suffered egregious harm by "the impact of the omission in the jury charge of reasonable doubt." Ellison,
86 S.W.3d at 228. 

 Here, the State introduced evidence appellant committed these extraneous offenses. Appellant's counsel never disputed
whether appellant committed any of the extraneous crimes or acts. He merely requested that the jury not punish the
appellant for his previous offenses. 

 The jury also received specific instructions on appellant's sentencing. The jury was told appellant could be sentenced to
life or for a term of not more than ninety-nine years imprisonment and fined up to $10,000.00 for the aggravated sexual
assault conviction and up to twenty years imprisonment and fined $10,000.00 for the indecency with a child conviction.
However, the jury only sentenced the appellant to thirty years imprisonment for the aggravated sexual assault conviction
and ten years for indecency with a child conviction. Accordingly, we conclude the omission of the jury charge did not
cause appellant to suffer egregious harm. See Huizar v. State, 29 S.W.3d 249, 251 (Tex. App.-San Antonio 2000, no pet.)
(explaining that even a sentence of ninety-nine years is not egregious harm since it is within the range of punishment for
aggravated sexual assault). Appellant's fourth issue is overruled.

E. Motion for a New Trial

 In appellant's fifth issue, he argues the trial court erred in not granting his motion for a new trial because the jury charge
improperly instructed the jury that appellant was eligible for good-conduct time even though he was convicted of an offense
that made him ineligible for good-conduct time. 

 Texas law provides that a defendant convicted of aggravated sexual assault is not eligible to receive good-conduct time
while incarcerated. Tex. Gov't Code Ann. § 508.149 (a)(8) (Vernon Supp. 2003). Where a defendant fails to object to a
jury charge on a constitutional violation basis, appellant waives the heightened harm analysis provided for reviewing
constitutional errors. Jimenez v. State, 32 S.W.3d 233, 237-38 (Tex. Crim. App. 2000). If the appellant failed to preserve
jury charge error, we may reverse only if the record demonstrates appellant suffered egregious harm. See id.; Almanza, 686
S.W.2d at 171. In determining the degree of harm suffered, we look to the entire jury charge, the evidence, including
contested and probative evidence, counsel's arguments, and any other relevant information. See id. 

 The trial court gave the jury a statutorily mandated jury charge that informed the jury of the existence of good-conduct
time. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon Supp. 2001). The jury charge also stated: It cannot accurately
be predicted how the parole law and good conduct time might be applied to this Defendant if he is sentenced to a term of
imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities. 

 You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be
applied to this particular Defendant.



Appellant did not object to this charge. Because appellant did not object, we look to see if the charge caused appellant to
suffer egregious harm. Jimenez, 32 S.W.3d at 238. 

 The charge used here instructed the jury that it could not be predicted how parole law and good-conduct time might be
applied to appellant. The jurors also were not to consider how "good conduct-time" might affect appellant's sentence.
Further, neither the State nor appellant specifically mentioned good-conduct time during closing arguments. See Atkinson v.
State, 2003 Tex. App. LEXIS 5050, at *10 (Dallas June 17, 2003, no pet. h.) (holding no egregious harm where neither
State nor defendant mention good-conduct time in closing arguments). 

 Without evidence to the contrary, we may assume the jury was not confused or misled by the charge and did not consider
the possibility of good-conduct time when assessing appellant's punishment. See id. We therefore hold that the inclusion
of the jury charge did not cause appellant to suffer egregious harm. Appellant's fifth issue is overruled.

F. Ineffective Assistance of Counsel

 In his sixth issue, appellant argues he received ineffective assistance of counsel during jury selection, the trial on the
merits, and the punishment phase. 

 To prevail on an ineffective assistance of counsel claim, appellant must satisfy the two-prong Strickland test set by the
United States Supreme Court. Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53,
56-57 (Tex. Crim. App. 1986). First, the appellant must show that his counsel's representation fell below an objective
standard of reasonableness. Strickland, 466 U.S. at 688. This requires showing that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. Second, appellant
must show the deficient performance prejudiced the defense. Id. at 687. To demonstrate prejudice, the appellant must
"show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would
have been different." Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Appellant must prove both prongs of
theStrickland test by a preponderance of the evidence. Id. at 712. 

 A review of trial counsel's representation at trial is highly deferential, and we presume his counsel's conduct fell within the
wide range of reasonable professional assistance. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To
defeat the presumption, ineffective assistance must be firmly founded in the record. Id. at 814. If there is no evidence of
why appellant's trial counsel failed to object, the appellate court will assume a strategic reason for not objecting. See
Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) cert. denied, 2003 LEXIS 1206 (U.S. Feb. 24, 2003). A court
will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no
competent attorney would have engaged in it. Id. at 440. 

1. Jury Selection

 Appellant argues there were two errors made during the jury selection. First, appellant claims his trial counsel allowed
inadmissible expert opinion when Mrs. Salinas, a potential jury member, spoke during voir dire. Mrs. Salinas stated:
"Well, I had several sex offenders on my case load. Every single one of them either denied it or they said they are high on
drugs or several other reasons." Appellant claims that his counsel was ineffective because he failed to move for a mistrial. 

 Appellant relies on Young v. State to show that his trial counsel's conduct fell below an objective standard of
reasonableness because he did not move for a mistrial. Young v. State, 73 S.W.3d 482, 488 (Tex. App.-Houston [1st Dist.]
2002, pet. granted). In Young,a venire person stated, "what I have found in 25 to 30 years is that usually when a child says
something has been done like this, usually the majority of the cases I've worked with, it's the truth." Id. at 484. The venire
person made these comments after warning the trial judge that she had reasons for not being objective. Id. The trial judge
then overruled defense counsel's motion for a mistrial. Id. The Houston Court of Appeals reversed the conviction
reasoning that the harmful effect of the statement could not be cured by an instruction to disregard because the statement
was twice repeated by the trial judge himself in the presence of the entire jury panel. Id. at 488. The statement also
infringed on the defendant's presumption of innocence. Id. at 488. 

 This case is distinguishable from Young. Young involved a motion for a mistrial due to a tainted jury panel, not whether
the defendant received ineffective assistance of counsel. Also, the trial judge here never reinforced or otherwise
commented on Ms. Salinas's statements, nor did Mrs. Salinas try to warn the judge that she could not be objective. Further,
the record does not show the reason appellant's trial counsel did not object to Mrs. Salinas's statement, nor does it indicate
what strategy his trial counsel pursued. We conclude appellant did not meet the first prong of the Strickland test. 

 Next, appellant argues his counsel provided ineffective representation when he failed to object to various statements by
venire members during voir dire. The statements were: (1) children generally do not lie about sexual abuse; (2) it is
difficult to find evidence of sexual abuse; (3) children feel responsible for breaking up the family; and (4) sex offenders
deny these allegations or say they are high on drugs. Appellant says that through counsel's failure to challenge these
statements, appellant was denied his right to confront witnesses. 

 The record indicates that appellant's trial counsel questioned various venire members about their ability to be objective. He
challenged venire members for cause because either the venire members admitted they could not be objective or their work
or personal experience would make it difficult for them to put their feelings aside. Appellant has pointed to no evidence in
the record showing why counsel failed to object, nor has he shown that his trial counsel's failure to object was not part of an
objectively reasonable trial strategy. See Garcia, 57 S.W.3d at 440. 

 We hold that appellant did not demonstrate his trial counsel's conduct fell outside a wide range of reasonable professional
assistance during the jury selection.

2. Trial on the Merits 

 Appellant argues he received ineffective assistance of counsel during the trial on the merits. In particular, he contends his
counsel failed to object to the introduction of inadmissible testimony and failed to request a jury instruction for extraneous
offenses. 

 Turning to appellant's first point, appellant lists several instances during the State's case where his trial counsel should
have objected. These instances include: (1) Ms. Krska's testimony that a CPS worker told her CPS believed B.H. had been
sexually assaulted; (2) Officer Trevino's testimony about statements B.H. made to him; (3) Officer Trevino's testimony
about appellant's oral statements; and (4) Nurse Guerrero's testimony about B.H.'s statements in which B.H. said appellant
"touches" her. 

 In each of these instances, appellant's counsel either elicited the testimony in question or cross-examined the witness on his
or her testimony. Moreover, nothing in the record suggests that counsel's failure to object in these instances as anything
other than part of an overall strategic design. Appellant has failed to overcome the presumption that his trial counsel's
conduct fell below an objective standard of reasonableness. 

 Second, appellant contends Nurse Guerrero's testimony made reference to extraneous acts, for which his counsel should
have requested a jury instruction on extraneous offenses. Appellant directs our attention to the following exchange during
Nurse Guerrero's testimony: 

A: Okay. She tells me as I'm asking her why she's there. She starts telling me, and this is the diagram of the child.



Q: Are you-is she filling out the diagram?



A: I'm filling out the diagram. It says: My dad grabs me here. He then takes off my shorts or panties and puts his hands
and touches me here. And this is pointing to the genital area. And in another she says: My dad touches me here with his
finger. He uses the finger. He uses the index finger, and it hurts.



 We do not interpret this testimony to refer to anything but the charged offenses. B.H., seven years old at the time of her
statements to Nurse Guerrero, appeared to be using the present tense as she spoke. Her testimony referred to two instances
of contact-one before her clothing was removed and one after. As noted in Section B above, this testimony was evidence of
multiple acts within the same episode that serve as the basis for the two convictions. Nothing in the record suggests B.H.
was describing extraneous offenses. 

 We hold appellant did not receive ineffective assistance of counsel during the trial on the merits. 

3. Punishment Phase 

 Appellant contends his trial counsel provided ineffective assistance of counsel by failing to object to: (1) the State's
closing argument regarding CPS records; (2) the State's mischaracterization of B.H.'s testimony; (3) the punishment charge;
(4) reference to parole law by the State during closing arguments; and (5) the State's use of extraneous acts. Appellant also
contends counsel should have requested an extraneous act instruction. 

 First, appellant contends his counsel should have objected to the mention of CPS records in the following portion of the
State's argument:

[Defense counsel] has the opportunity just as he said to subpoena those CPS records if there are any, but he didn't do that
because he knows what they will show. They're going to show reasons to believe that the abuse happened, and he doesn't
want you to see that. 



 There are four areas of proper jury argument: (1) summation of evidence; (2) reasonable deduction from the evidence; (3)
answer to opposing counsel's argument; and (4) pleas for law enforcement. See Albiar v. State, 739 S.W.2d 360, 362 (Tex.
Crim. App. 1987). 

 The record shows the State's argument regarding the CPS records was made in response to defense counsel's own closing
arguments suggesting the records would have established appellant's innocense: 

Where was the CPS worker? They are the experts in the sex crimes against children. We didn't hear from them or saw
[sic] the reports. They could have cleared all of the questions for you. They could have taken [B.H.] to their department.



Because the State's argument was proper, appellant's counsel did not render ineffective assistance by failing to object. 

 Second, appellant contends trial counsel should have objected to the following statements made by the State: "B.H. says it
happened. She says it happened this way every time." Appellant says this statement refers to extraneous acts. 

 The record supports a different interpretation of the statement. In a previous part of its argument, the State said, "[a]nd
[B.H.] says the same thing every time. She doesn't waiver on what happened in this case." Placed in the context of the
State's previous arguments, the challenged statement appears to reflect only that B.H. told the same story every time she
described the incident. Given this reasonable interpretation, appellant has failed to show counsel acted below a reasonable
objective standard in failing to object to this statement. 

 We address appellant's third and fourth points together. Appellant contends his counsel should have objected to the
mention of parole law and good-conduct time in the punishment charge and the State's mention of parole law in its closing
statement. As noted in Section E above, the charge also told the jury not to consider how parole law might apply to
appellant. Moreover, the State's mention of parole was general and did not suggest to the jury that they should consider
how it might apply to appellant in determining his sentences. Under these circumstances, we do not find counsel's failure
to object was so outrageous as to constitute ineffective assistance. 

 In his fifth point, appellant contends the State did not give appellant adequate notice when it introduced medical records of
appellant's treatment for drug and alcohol abuse. 

 At the punishment phase of trial, the parties may offer evidence of any matter the court deems relevant to sentencing. 
SeeTex. Code Crim. Proc. Ann. art. 37.07 §3(a);Roman v. State, 986 S.W.2d 64, 65 (Tex. App.-Austin 1999, pet. ref'd). 
Upon the defendant's timely request, the State must give notice of its intent to introduce punishment evidence. See Tex.
Code Crim. Proc. Ann. art. 37.07 § 3(g). 

 The trial record shows that the State gave appellant notice that it intended to use evidence that "[t]he defendant abuses
alcohol, drugs, and controlled substances." Appellant's trial counsel also referred to the medical records in his closing
arguments. He highlighted specific instances where the appellant attempted to get medical help for his substance abuse
problems, and then asked the jury not to punish him for his previous bad acts. The appellant does not show that his trial
counsel failed to object for a reason other than a tactical one. Therefore, we conclude that appellant did not overcome the
presumption that his trial counsel's conduct fell below an objectively reasonable standard. Finally, appellant contends his
counsel was ineffective for failing to object to the omitted beyond-a-reasonable-doubt instruction for extraneous offenses.
As we discussed in Section D above, the failure to issue the instructions was not reversible error. Moreover, there is no
evidence in the record that appellant's trial counsel failed to object for any reason other than a tactical one. 

 In sum, appellant failed to show any evidence that his trial counsel's conduct fell below a wide range of reasonable
professional assistance. See Strickland, 466 U.S. at 688. Appellant's sixth issue is overruled.

III. Conclusion 

Having overruled each of appellant's issues, we affirm the judgment of the trial court. 

 

 

 Rogelio Valdez,

 Chief Justice



Do not publish.

Tex. R. App. P. 47.2(b).



Opinion delivered and filed

this 4th day of September, 2003.

 





















1. The Texas Rules of Appellate Procedure were amended effective January 1, 2003 to require the trial court to enter a
certification of defendant's right to appeal. See Tex. R. App. P. 25.2(a)(2). Accordingly, we abated this appeal on July 24,
2003 and ordered a supplemental record to include, in compliance with rule 25.2(a)(2), the trial court's certification of
appellant's right to appeal. See id. We received a supplemental record on August 20, 2003 that includes the trial court's
certification of appellant's right of appeal. We now turn to the merits of appellant's case.